## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TIM ROMIG, et al.,**[1] | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | **NO. 12-3204** |
| | : | |
| **CHRIS L. BOEHM, et al.,** | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                   **March 16, 2015**

Tim and Jacqueline Romig brought this action pursuant to 42 U.S.C. § 1983 against the Borough of Macungie, its Manager, and its Solicitor alleging violations of the couple's constitutional rights. The defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to which the plaintiffs have responded. For the reasons that follow, I will grant this motion in its entirety, and dismiss this action. Because I find that amending the complaint would be futile, I decline to give the plaintiffs leave to amend it.

---

[1] Jacqueline Romig is named in this complaint as her husband's co-plaintiff. I note, however, that there is neither a loss of consortium claim here nor any mention of Ms. Romig's joining in the public criticism of the Borough government with her husband which led to the alleged retaliation by the Borough. She is only mentioned as a co-owner and operator of the family business which is not a party here. Furthermore, the complaint inconsistently interchanges the words "plaintiff" and "plaintiffs" such that Ms. Romig's role in this action and any relief she seeks are uncertain. These deficiencies in the complaint are harmless, however, because of its ultimate disposition.

## I. BACKGROUND[2]

The plaintiffs are the owners of Automotive Services Solution, a business property located at 50 Race Street in Macungie, Pennsylvania.  Defendant Chris L. Boehm is the Macungie Borough Manager and its Assistant Zoning Officer.  In 2008, the plaintiffs were approached by Ms. Boehm and Mike Schlossberg from the Greater Lehigh Valley Chamber of Commerce to request the plaintiffs' participation in the Business Revitalization Program which involved painting a mural on the side of the building of their business.  The plaintiffs submitted an application to participate in this program on April 1, 2008.  They sent a letter to Mr. Schlossberg on October 13, 2008, and hand-delivered a copy to the Borough.  In the letter, Mr. Romig described his proposed mural as "of an old-fashioned car repair business that will measure approximately 22 x 40 feet." See Document #7-2.  He added, "Our hope is that as you drive by, a mural of a life sized car repair shop, showing 2 open garage bays and a customer entrance with the signage, equipment, and look of a nostalgic business will draw attention while not looking like an advertisement."[3]  Id.  Instead of a proposed sketch of the mural, Mr. Romig included four examples of the artist's previous work as an example of the artist's design aesthetic.  Id.

---

[2] The facts are gleaned from the complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004).  For the purposes of this motion, they are presented in the light most favorable to the plaintiffs, as the non-moving parties, and are accepted as true with all reasonable inferences drawn in their favor. I may also consider documents that are attached to or submitted with the complaint, Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002), and any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, Orders, [and] items appearing in the record of the case."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. Pa. 2006).

[3]  I note that nowhere in the letter does Mr. Romig mention that the proposed mural would include his business's telephone number, or the car repair services provided at the business.

It is undisputed here that providing a sketch of the proposed mural for approval was not a requirement for participation in the program.

In January 2009, the plaintiffs were awarded a state grant of $3,426.25 towards the cost of the mural. The plaintiffs engaged an artist to paint the mural at a cost of nearly $20,000. In June 2010, when the mural was almost complete, Mr. Romig received a violation/enforcement notice from the Borough signed by Ms. Boehm which cited the failure to obtain a zoning permit for the mural. The notice also cited the rather large size of the mural as a violation of a Borough ordinance. Mr. Romig contends that Ms. Boehm sent this notice to him in retaliation for his years-long criticism of her at town meetings. Mr. Romig appealed this decision to the Zoning Hearing Board which determined that the zoning enforcement letter was properly issued but granted the Romigs a variance in order to keep the mural/sign.

The complaint also alleges that from 2010 through 2012, Ms. Boehm manipulated the zoning process to continue her retaliation against Mr. Romig. On February 10, 2011 and March 28, 2011, the Macungie zoning officer, allegedly under Ms. Boehm's direction, denied an occupancy permit for the use of a commercial property owned by Mr. Romig's parents. Finally, the complaint alleges that in May 2012, the new solicitor sought to curb Mr. Romig's speech during the public participation portion of the Borough Council meeting. See Compl. ¶ 48.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the sufficiency of

the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Following the Supreme

Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleadings standards in federal actions have

shifted from simple notice pleading to a more heightened form of pleading, requiring a

plaintiff to plead more than the possibility of relief to survive a motion to dismiss under

Fed. R. Civ. P.12(b)(6).  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir.

2009); see also Phillips v. County of Allegheny, 515 F. 3d 224, 230 (3d Cir. 2008).

Therefore, when presented with a motion to dismiss for failure to state a claim,

district courts should conduct a two-part analysis.  First, the factual and legal elements of

a claim should be separated.  The court must accept all of the complaint's well-pleaded

facts as true but may disregard legal conclusions.  Iqbal, 556 U.S. at 679.  Second, a

district court must determine whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a "plausible claim for relief."  Id.  In other words, a complaint

must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show"

such an entitlement with its facts.  Id.; see also Phillips, 515 F.3d at 234-235.  "Where the

well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is

entitled to relief.'"  Iqbal, 556 U.S. at 679.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short

and plain statement of the claim showing that the pleader is entitled to relief."  As the

Court held in Twombly, the pleading standard Rule 8 announces does not require

"detailed factual allegations," but it demands more than an unadorned, the-defendant-

4

unlawfully-harmed-me accusation.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id. at 557.

## III. DISCUSSION

The Romigs have brought this action against the defendants pursuant to 42 U.S.C. § 1983, alleging violations of their First and Fourteenth Amendment rights.  Under 42 U.S.C. § 1983, a private party may recover in an action against any person acting under the color of state law who deprives the party of his or her constitutional rights.  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not by itself confer substantive rights, but instead provides a remedy for redress when a constitutionally protected right has been violated.  Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).  Therefore, in order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the Constitution, and (2) that the constitutional deprivation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

### A.  Claims Against the Individual Defendants

#### 1.  Defendant Boehm

In Count Two, the plaintiffs bring a claim solely against Ms. Boehm for "official oppression and intimidation" alleging that she used the power of her office to retaliate against the plaintiffs by issuing a violation/enforcement notice more than seventeen months after she knew the mural was problematic and would create zoning issues.[4]  In Counts Four and Five, the plaintiffs bring claims solely against Ms. Boehm for violations of the rights afforded by the First Amendment to the United States Constitution.  In Counts One, Three, and Seven, the plaintiffs bring claims against both the Macungie Borough and Ms. Boehm.  These claims allege that Mr. Romig was deprived of his lawful right to speak and criticize a government official at public meetings and not fear retaliation by the government; and that Ms. Boehm used the power of her office to retaliate against him.  The complaint also alleges that Mr. Romig was deprived of his right to petition the government for redress of grievances without fear of governmental retaliation in violation of the First and Fourteenth Amendments.[5]

---

[4]  I assume based on the context of Count Two and the entire complaint itself that the plaintiffs did not intend to bring a claim of "Official Oppression," a criminal offense under Pennsylvania law, over which this court has no jurisdiction.  See 18 Pa. C.S.A. § 5301.

[5]  The First Amendment forbids government officials from retaliating against individuals for speaking out.  Hartman v. Moore, 547 U.S. 250, 256 (2006).  It provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States.  NAACP v. Claiborne Hardware Co., 458 U.S. 886, 907 n.43 (1982).  Although the right to free speech and the right to petition are separate rights, the Supreme Court has explained that they are "essentially the same" and are subject to the same analysis.  Wayte v. United States, 470 U.S.

2. Unnamed Solicitor

In Count Six, the plaintiffs bring a claim solely against an unnamed Borough Solicitor for also violating Mr. Romig's First Amendment rights by disrupting his speech during the public participation portion of a May 2012 Borough Council meeting. The Solicitor's actions were allegedly "an attempt to chill and stifle the speech of a citizen during the public participation portion of the Borough Council meeting in violation of the First Amendment." See Compl. ¶ 50.

**B. Qualified Immunity**

The two individual defendants argue that the claims against them should be dismissed because they are entitled to qualified immunity. I agree.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Thomas v. Independence Township, 463 F.3d 285, 291 (3d Cir. 2006) (the purpose of the qualified immunity defense is to shield government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or

_____

598, 610 n.11 (1985). Here, although the plaintiffs allege that the defendants retaliated against them for exercising both their First Amendment right of free speech and the right to petition the government, I shall address them as the same retaliation violation.

those who knowingly violate the law." Messerschmidt v. Millender, ___ U.S. ___, 132 S. Ct. 1235, 1244-45 (2012). The Supreme Court has noted the importance of resolving immunity questions at the earliest possible stage of litigation. See Pearson, 555 U.S. at 232. There is a two-step procedure for resolving government officials' qualified immunity claims: (1) the court must decide whether the plaintiff has sufficiently pled facts making out a violation of a constitutional right; and (2) the court must decide whether the constitutional right at issue was clearly established at the time of the alleged misconduct. Id.; see also Saucier v. Katz, 533 U.S. 194 (2001). The court is free to address either prong first. Pearson, 555 U.S. at 236. Here, I will first examine whether the plaintiffs have stated cognizable constitutional claims because that analysis is dispositive.

     1. Defendant Boehm

     In determining whether Ms. Boehm is entitled to qualified immunity, the first step requires a determination of whether the plaintiffs sufficiently pled facts making out a violation of a constitutional right. To plead a First Amendment retaliation claim as asserted here, "a plaintiff must allege: (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas, 463 F.3d at 296. The key question is whether "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Id. (quoting McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006)); see also Crawford-El v. Britton, 523 U.S. 574, 589 n.10 (1998) ("The

8

reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right.")

(i)   Violation/Enforcement Notice Not Retaliatory

Here, the plaintiffs have failed to establish a *prima facie* case of retaliation.  The first element must allege constitutionally protected conduct.  Certainly, the Constitution protects criticizing government officials.  Thus, for the purposes of this motion, I will accept as true the allegation that whatever Mr. Romig said at the borough meetings against its officials was criticism, and I will assume that the first element is satisfied.

The second element, however, is not satisfied.  It calls for a retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  First, I note that it does not appear that Mr. Romig's continuing criticism was in any way deterred throughout the years.  In fact, the complaint gives the impression that Mr. Romig criticized Ms. Boehm at Borough meetings *beginning* in 2006, and that that conduct continued "into 2011 and 2012."  See Compl. at 2, 3.  I also note that the plaintiffs have not alleged that their criticizing was in any way deterred by the alleged retaliation.

Second, the plaintiffs claim that their First Amendment rights were violated when Borough officials failed to notify them of the permit requirement for the mural in retaliation for Mr. Romig's continued criticism of them.  These claims are meritless.

The Agreement between the Romigs and the Greater Lehigh Valley Chamber Foundation, executed by Ms. Romig, indicates that the Grantee, i.e., Ms. Romig, represents and warrants that she "has or will submit copies of all required permits and approvals to the Foundation prior to commencing work on the project," and that she will

9

"comply with all laws, regulations and ordinances of the Commonwealth of Pennsylvania and the Borough of Macungie, applicable to the project." See Document #7-2. Thus, it was not incumbent upon any of the Borough officials to warn the plaintiffs about the need to secure the appropriate permits and approvals in order to move forward with the mural. Ms. Romig accepted that responsibility upon execution of the Agreement, and to attempt to blame others for that failure is fatal to this portion of the plaintiffs' claims of retaliation.

The complaint further alleges that Ms. Boehm knew as early as January 9, 2009 that the proposed mural would be considered a sign pursuant to the Macungie Zoning Ordinance, yet, in retaliation, she waited until the completion of the mural to inform Mr. Romig that his mural was an illegal sign. Given the allegations set forth in the complaint and the evidence found in documents upon which the complaint is based, it is disingenuous of the plaintiffs to characterize their receipt of a violation/enforcement notice as a retaliatory action.

It is undisputed that the plaintiffs neither submitted a draft sketch of their proposed mural to the Borough in advance, nor were they required to do so. Thus, it was impossible for Ms. Boehm to have known on January 9, 2009 that the plaintiffs' mural would be a sign. She could not have known until it became apparent that the plaintiffs were violating the Macungie zoning ordinance, i.e., when the mural was almost completed and its advertising portions and size were visible from the road. Ms. Boehm testified before the Zoning Board on November 10, 2010, that she drove by the plaintiffs' business on May 26, 2010, and realized that there was advertising being painted inside

10

the confines of the mural.  See Notes of Testimony, 11/10/2010 at 15.  Ms. Boehm explained that the Romigs' mural was considered a sign because of the advertising portions which display the business's phone number, the fact that the business conducts Pennsylvania state car inspections, car tune-ups, and AC repair.  Id. at 16-17.  She also testified that the borough ordinance permits the maximum size of a sign to be 300 square feet or 15% of the wall upon which the sign is painted, but the approximate size of the plaintiffs' mural was 756 square feet.  Id. at 24.

On the afternoon of May 26, 2010, Ms. Boehm emailed Mr. Schlossberg asking for all correspondence he had had with the plaintiffs regarding the project.  She informed him that the plaintiffs' mural included advertising, and she wanted to be certain that Mr. Schlossberg had informed them that they needed a permit if advertising was included.  See Document 7-2 at 50.  Ms. Boehm also referenced an earlier email from Mr. Schlossberg dated September 29, 2009, which informed Ms. Boehm that the plaintiffs had decided that "they were NOT going to go with a sign in their mural."  Id. at 48.  Mr. Schlossberg responded that he had informed them of the need for permits, and reminded Ms. Boehm that Ms. Romig had signed the contract requiring the plaintiffs to obtain any permits and approvals.  Id. at 49.

On June 9, 2010, Ms. Boehm issued the violation/enforcement notice[6] indicating that the plaintiffs had painted a wall sign on the exterior of their building without the

---

[6] The Romigs appealed that violation to the Zoning Hearing Board which held two separate hearings.  After the first hearing held on November 10, 2010, the Board affirmed the Officer's determination, and found that the Romigs' "sign/mural falls within the definition of a sign and was erected without the granting of a permit.  See Document #7-3.  At the second hearing held

required zoning permit, and that the size of the sign was over the ordinance's limit.  The

notice informed the plaintiffs that they were in violation of Zoning Ordinance Section

345-24.A(2), which defines a sign as "any device or method which visually imparts a

message through the use of text, pictures, or models to individuals using public right-of-

ways."  See Document #7-2 at 5.  The ordinance also defines a business sign as "a sign

which directs attention to a business or a profession conducted upon a property where the

sign is displayed."  Id.

Nothing surrounding the violation/enforcement notice can be characterized as

retaliatory.  It cannot be disputed that the plaintiffs' mural included advertisements, that it

was too large, and that the plaintiffs failed to get the necessary permit as they had

contracted.  As such, the plaintiffs violated Borough ordinances.  Ms. Boehm properly

issued the notice to the plaintiffs as was required by the duties of her position with the

Borough.  See Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002) (a

defendant may defeat a plaintiff's claim for retaliation by showing that it would have

taken the same action even in the absence of protected conduct).  Thus, the plaintiffs have

failed to satisfy the second element of a *prima facie* case for First Amendment retaliation.

Because the plaintiffs have not pleaded sufficient facts to establish a violation of a

constitutional right, I find that Ms. Boehm is entitled to qualified immunity in Counts

---

on December 8, 2010, the Board heard testimony regarding the Romigs' request for a variance to
maintain the sign.  The Board then determined that the request for a variance for the sign should
be granted because the Romigs had "proved a sufficient and unnecessary hardship as the subject
property is of a unique shape, size, configuration and is bordered by a railroad, and two streets,
along with an inordinately large set back."  Id.  The Board also determined that the variance
request was the minimum which would afford relief to the Romigs, and that the hardship was not
self-created.  Id.

One, Two, Three, and Four.  See Pearson, 555 U.S. at 232.  Accordingly, I will grant her motion and dismiss her as a defendant as to those counts.

In the alternative, even if the plaintiffs satisfied the second element, they would still be unable to satisfy the third element which requires a causal link between the constitutionally protected conduct and the retaliatory action.  To establish a causal connection, a plaintiff must prove either "an unusually suggestive temporal proximity between the protected activity and allegedly retaliatory action" or "a pattern of antagonism coupled with timing to establish a causal link."  Cooper, et al. v. Menges, et al., 541 F.App'x 228, 232 (3d Cir. 2013) (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).  The court must determine whether the evidence of a pattern of antagonism is sufficient "based on the whole picture."  Marra v. Phila. Hous. Auth., 497 F.3d 286, 303 (3d Cir. 2007) (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997)).  Temporal proximity itself is not an element of a retaliation claim, but can be indicative of causation.  McLaughlin v. Fisher, 277 F.App'x 207, 219 (3d Cir. 2008) (citing Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997)).  Determining whether temporal proximity alone is enough to show causation is essentially a fact-based inquiry.  McLaughlin, 277 F.App'x at 219 (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000)).

Neither of the elements establishing a causal link is present here.  Ms. Boehm issued the violation/enforcement notice on June 9, 2010.  Mr. Romig had been publically criticizing her and the Borough since 2006 and continuing through 2012.  The constitutionally protected conduct spans several years before the issuance of the notice in

June 2010.  Thus, the plaintiffs have failed to establish the required unusually suggestive temporal proximity between the conduct and the alleged retaliatory action.

The plaintiffs have also failed to establish a pattern of antagonism between themselves and Ms. Boehm at the time of the issuance of the violation/enforcement notice.  While Mr. Romig alleges that he continually and publically criticized Ms. Boehm, there are no allegations that that same hostility was mutual before June 2010.  In fact, it was not until months after the issuance of the violation notice, that there is any such indication of a mutual antagonism.  In a letter to Borough Council dated September 12, 2010, Mr. Romig formally complained "about Chris Boehm's derogatory comments about him personally and his business noting that this was an ongoing and continuing pattern of behavior."  See Compl. ¶ 19.  These naked assertions, however, are devoid of further factual enhancement, and are insufficient to show the required pattern of antagonism especially where there is a lack of temporal proximity.  Thus, if the second element were met, the plaintiffs would have still failed to establish the third element of a *prima facie* case of First Amendment retaliation, i.e., a causal link between Mr. Romig's criticism and Ms. Boehm's issuance of the violation/enforcement notice.

(ii) <u>Denial of Occupancy Permit</u>

The complaint alleges in Count Five that Ms. Boehm retaliated against the Romigs by manipulating the zoning process to deny an occupancy permit to Mr. Romig's parents.  Specifically, the complaint alleges that "on February 10, 2011 and March 28, 2011, the zoning officer under the direction of the Borough Manager denied an occupancy permit for the use of a commercial property owned by Mr. Romig's parents across the street

14

from Romig's principal place of business." <u>See</u> Compl. ¶ 23.  The couple was forced to appeal that decision which, according to the complaint, "should have been approved as a prior use without the necessity of the expense of an appeal." <u>Id.</u> at ¶ 24.

Initially, I must note that while the pleading standard of Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand more than naked assertions devoid of further factual enhancement.  <u>Twombly</u>, 550 U.S. at 555.  With seemingly no supporting factual basis, the plaintiffs allege that the Zoning Officer denied the occupancy permit under the direction of Ms. Boehm, the Assistant Zoning Officer.  The complaint provides no details surrounding the denial other than to indicate that it "was done to harass Tim Romig" and to retaliate against him "because of his criticism of the Borough Manager." <u>See</u> Compl. ¶ 25.  Without knowing the specifics of the denial, it is impossible to perform the above analysis to determine whether the plaintiffs have pleaded a *prima facie* First Amendment retaliation claim in Count Five. <u>See</u> <u>Thomas</u>, 463 F.3d at 296.  If this were a *pro se* complaint, I would be compelled to construe it liberally, instead of holding it to the more stringent standard of pleadings drafted by lawyers.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521 (1972) (quoting <u>Conley v. Gibson</u>, 355 U.S. at 45-46).  It is not a *pro se* complaint, however, and thus is not entitled to be treated like one.

Nevertheless, this claim is meritless because the plaintiffs were not the targets of the alleged retaliatory action.  Instead, Mr. Romig's parents were, and they are not parties to this action.  While his criticism of Ms. Boehm is constitutionally protected conduct, Mr. Romig cannot complain of a retaliatory action when the alleged injury did not injure

15

him personally.  See Linda R. S. v. Richard D., et al., 410 U.S. 614, 617 (1973) (a federal court's jurisdiction can be invoked only when the plaintiff *himself* has suffered some threatened or actual injury resulting from the putatively illegal action).  Accordingly, because bringing a claim based on an injury to a third party is insufficient for a plaintiff to establish a constitutional violation, I find that Ms. Boehm is entitled to qualified immunity in Count Five, and I will grant her motion as to that count.  See Pearson, 555 U.S. at 232.

### 2.  Unnamed Solicitor

In Count Six, the plaintiffs bring a claim solely against an unnamed Borough Solicitor for violating Mr. Romig's First Amendment rights by "disrupting" his speech during the public participation portion of a May 2012 Borough Council meeting.  See Compl. ¶ 50.  Because the plaintiffs have failed to show that this incident rose to a constitutional violation, I find that the solicitor is entitled to qualified immunity.

When a First Amendment free speech challenge arises from a restriction on speech on government owned or controlled property, the classification of the forum determines the contours of the First Amendment rights that a court recognizes when reviewing the challenged governmental action.  United States v. Marcavage, 609 F.3d 264, 274 (3d Cir. 2010) ("The degree of First Amendment protection a speaker enjoys depends on the type of forum in which his expressive activity occurred.")  When deciding First Amendment cases, the Third Circuit Court of Appeals has discussed three categories of public forums:

(1) the traditional public forum;[7] (2) the designated public forum;[8] and (3) the limited public forum.[9]  Galena v. Leone, et al., 638 F.3d 186, 197 (3d Cir. 2010).

In both traditional public forums and designated public forums, the government may enact reasonable time, place, and manner restrictions on speech, but any restrictions on the content of speech must be tailored narrowly to serve a compelling government interest.  Pleasant Grove City v. Summum, 555 U.S. 460 (2009).  The First Amendment prohibits restrictions based on a speaker's viewpoint in both types of forums.  Id.

In Eichenlaub v. Township of Indiana, 385 F.3d 274 (3d Cir. 2004), the Third Circuit held that the citizens' forum portion of the Indiana Township Board of Supervisors meeting was a limited public forum because "public bodies may confine their meetings to specified subject matter . . . matters presented at a citizen's forum may be limited to issues germane to town government." Id. at 281.  In limited public forums, to avoid infringing on First Amendment rights, the governmental regulation of speech only need be viewpoint-neutral and reasonable in light of the purpose served by the forum.  Good News Club v. Milford Cent. Sch., 533 U.S. 98, 107 (2001).

---

[7]  Traditional public forums include public streets, parks, and other public areas traditionally devoted to assembly and debate.  Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998).

[8]  A government entity creates a designated public forum when it intentionally designates property that traditionally has not been regarded as a public forum for use as a public forum. Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez, 561 U.S. 661, 679 n.11 (2010).

[9]  A governmental entity creates a limited public forum when it provides for "a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects." Pleasant Grove City v. Summum, 555 U.S. 460 (2009).  Here, based on the scant facts provided, I assume that the May 2012 Borough Council meeting would be considered a limited public forum.

In a limited public forum, such as a town council meeting, content-based restraints are permitted, so long as they are designed to confine the forum to the limited and legitimate purposes for which it was created. Eichenlaub, 385 F.3d at 280. The government may not regulate speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction. Rosenberger v. Rector and Visitors of the Univ. of Va., 515 U.S. 819, 829 (1995). The government, however, may restrict the time, place, and manner of speech, as long as those restrictions are reasonable and serve the purpose for which the government created the limited public forum. Pleasant Grove City v. Summum, 555 U.S. 460 (2009).

Here, this counseled complaint again provides no details surrounding this alleged constitutional violation, except a conclusion that the solicitor, who remained nameless throughout, was "obviously acting at the behest of the Borough Council." Id. at ¶ 48. The plaintiffs further allege that "there was no basis in law or fact for the solicitor's 'challenge' to Romig's public comments during the Council meeting." Id. at ¶ 49. These legal conclusions are disregarded as supported by mere conclusory statements. See Ethypharm S.A. France v. Abbott Laboratories, 707 F.3d 223, 231, n.14 (3d Cir. 2013). All the reader can infer from the barebones allegations is that something happened allegedly during the public participation portion of the May 2012 Borough Council meeting resulting in the unnamed solicitor "disrupting" Mr. Romig's speech. Nothing in the complaint provides the backdrop of the incident which would allow an analysis of what actually occurred at that meeting, how the solicitor disrupted Mr. Romig's speech, and whether the disruption stemmed from an impermissible restriction of speech. Had

these basic facts been provided and well-pleaded, I would have been compelled to accept them as true. Iqbal, 556 U.S. at 679. Without knowing the specifics of the incident at the borough meeting, it is impossible to conclude that the plaintiffs have shown that Mr. Romig's constitutional rights were violated by the unnamed solicitor. Accordingly, I find that the defendant solicitor is entitled to qualified immunity, and will dismiss Count Six from the complaint.

### C. Claims Against the Borough of Macungie

In Counts One, Three, and Seven, the plaintiffs bring claims against the Borough of Macungie and its Borough Manager alleging violations of the rights afforded under the First Amendment to the United States Constitution. Specifically, they claim that the Borough deprived them of their right to speak and criticize a government official without fear of retaliation; and that it developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of businesses. The complaint also alleges that there is a pattern of governmental and official retaliation by the Borough against the plaintiffs for speaking out during the public portion of Borough Council meetings, and for criticizing the Borough government and Ms. Boehm.

Section 1983 applies to municipalities and other local governing bodies. Monell v. Dept. of Social Services, 436 U.S. 658, 690 (1978). The municipality may be sued under § 1983 where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. However, a municipality may not be held liable solely on a theory of *respondeat superior*. Id. at 691. "[I]t is when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694.  When presented with a § 1983 claim, a court must analyze both whether the plaintiff's harm was caused by a constitutional violation, and whether the municipality was responsible for the violation.  See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).

In order for liability to be imposed against a municipality, the court must find there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).  There are two ways a government policy or custom may be established for a Monell claim.  See Kean v. Henry, 523 F.App'x 879, 881 (3d Cir. 2013); Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).  A policy is made when a decisionmaker with final authority issues an official proclamation, policy, or edict.  See Kean, 523 F.App'x at 881; Andrews, 895 F.2d at 1480 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).  A custom can be established through a course of conduct when, while not authorized by state law, "'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Andrews, 895 F.2d at 1469 (citing Monell, 436 U.S. at 690); see also Kean, 523 F.App'x at 881.  The plaintiff must show that a policymaker is either responsible for the policy, or, through acquiescence, responsible for the custom.  See Kean, 523 F.App'x at 881; Andrews, 895 F.2d at 1480.  In determining whether an individual is a policymaker, the court must look to state law to decide whether

an official has "final, unreviewable discretion to make a decision or take an action."  See Id. at 1481.

Thus, it follows that a municipality "cannot be vicariously liable under Monell unless one of [its] employees is primarily liable under Section 1983 itself."  Williams v. Borough of West Chester, 891 F.2d 458, 467 (3d Cir. 1989).  That is, unless a person has suffered a constitutional injury at the hands of a town official, the fact that the municipality developed and maintained certain policies and/or customs is "quite beside the point."  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  Here, the plaintiffs failed to plead successfully any constitutional violations attributable to a Borough employee.  Accordingly, these Monell claims must also fail, and I will grant the defendants' motion to dismiss Counts One, Three, and Seven.

In conclusion, a plaintiff in a civil rights action is usually granted leave to amend even if he does not request it and even if he is represented by counsel.  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).  The court does not have to grant such leave, however, if amendment would be futile.  Id.  After an exhaustive review of the complaint and the documents upon which it is based, I conclude that amendment would be futile as to all claims.

An appropriate Order follows.